UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, et al., Plaintiffs, | ) ) ) ) | |
| v. | ) ) | No. 4:14-CV-01406 ERW |
| STIKA CONCRETE CONTRACTING, CO., INC., et al., Defendant. | ) ) ) ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff Greater St. Louis Construction Laborers Welfare Fund's Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil [ECF No. 34].

**I.   BACKGROUND**

Plaintiff Greater St. Louis Construction Laborers Welfare Fund, (hereinafter "Plaintiff") filed its Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil (hereinafter "Motion") on December 4, 2015. Plaintiff's Motion asserts its attempt to execute on the judgment was returned *nulla bona*[1], and it has been wholly unable to collect the cumulative $43,254.32 in damages, delinquent fringe benefit contributions, liquidated damages, and interest owed to it by Defendant Stika Concrete Contracting Co., Inc. (hereinafter "Defendant") pursuant to this Court's July 1, 2015 Judgment ("Judgment") [ECF No. 27]. The amounts owed by Defendant are due pursuant to collective bargaining agreements between the parties which arise under the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1132 (2012), and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 (2012). Due to the closure and

---

[1] A return of *nulla bona* is a form of return by a sheriff upon execution when the debtor has no seizable property in the jurisdiction. BLACK'S LAW DICTIONARY (10th ed. 2014) (Westlaw).

1

insolvency of Defendant, Plaintiff seeks to satisfy the Judgment by proceeding against Stika Concrete and General Contracting, LLC (hereinafter "SCGC") as the alter ego of Defendant. Defendant opposes Plaintiff's Motion on the basis Mary Skaggs and her husband, both owners of SCGC, have not fraudulently concealed assets of the Defendant. Further, Defendant alleges, because, during Ms. Skaggs's deposition, she disclosed the existence of tools and trucks still owned by Defendant, Plaintiff has not fully exhausted other legal means to partially satisfy the Judgment. Thus, Defendant asserts, granting a creditor's bill to Plaintiff would be improper under the circumstances.

      A. *Facts Relating to Plaintiff's Alter Ego Theory*

The facts are mostly undisputed. Defendant was owned by Raymond and Rosalyn Stika. The Stika's daughter, Mary Skaggs, operated Defendant's business and controlled labor relations on behalf of Defendant. [ECF No. 35 at 1]. Defendant went out of business in early 2015, according to Plaintiff's Motion, and Mr. and Mrs. Stika chose not to continue in any construction business to avoid further personal financial risk. [ECF No. 39 at 1]. Their daughter, Ms. Skaggs, and Ms. Skaggs's husband then created SCGC on March 3, 2015.

Plaintiff argues SCGC is the alter ego of Defendant based on the multiple commonalities between the two businesses. For example, Defendant and SCGC share two of the same employees, and Ms. Skaggs operates the business and controls labor relations, as she did when she was employed by Defendant. Likewise, both businesses have utilized the same address: 10703 Tesshire Drive; the same shared telephone number: (314) 849-1600; and the same signage, emblazoned with the words "Stika Concrete Contractor," and "Est. 1964." [ECF No. 35 at 2]. Both businesses use the same building, although Defendant contends Ms. Skaggs does not own the building from which SCGC is functioning, but rather, leases the building from a third

party, and SCGC will move locations after the landlord sells the property. Defendant also states SCGC recently acquired new signage with their proper name informing customers of their impending move to a new location.

SCGC possesses two trucks; one labelled with Defendant's name, and one labelled with SCGC's own name and the shared phone number. SCGC's Facebook page links to the website formerly used by Defendant, and the Facebook page claims SCGC has been in business for 50 years. [ECF No. 35 at 2, 3]. Defendant responds, the Facebook page was mistakenly linked to old pictures and to Defendant's website due to SCGC's use of Ms. Skaggs's son's amateur social media services to save money. SCGC employees wear t-shirts which retain Defendant's name, the shared phone number, and the statement "est. 1964." [ECF No. 35 at 2].

**II. STANDARD**

"In the absence of a controlling federal statute, the district court 'has the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law.'" *H.H. Robertson Co., Cupples Products Div. v. V.S. DiCarlo Gen. Contractors, Inc.*, 994 F.2d 476, 477 (8th Cir. 1993) (quoting *United States ex rel. Goldman v. Meredith*, 596 F.2d 1353, 1357 (8th Cir.)). The Court has supplemental jurisdiction, under 28 U.S.C. § 1367, regarding a motion for a creditor's bill in equity which relates to an underlying ERISA delinquency. *Sunrise Const., Inc.*, No. 4:05-CV-481 CAS, 2009 WL 73664, at *1 (E.D. Mo. Jan. 8, 2009). The remedy of a creditor's bill in equity is available under Missouri law. *See H.H. Robertson Co., Cupples Products Div.*, 994 F.2d 476, 477 (8th Cir. 1993).

Issuance of a creditor's bill in equity is an equitable remedy "available to a creditor who seeks to enforce the payment of debts out of assets that cannot be reached by traditional means of execution on a judgment established in a suit at law." *Shockley v. Harry Sander Realty Co.*, 771

S.W.2d 922, 924 (Mo. Ct. App. 1989) (citing Dobbs, Handbook on the Law of Remedies § 1.3 at 11 (1973); *General Grocer Co. v. Ahlemeier*, 627 S.W.2d 61, 64 (Mo. App. 1981); *Publicity Building Realty Corp. v. Thomann*, 183 S.W.2d 69, 72 (Mo. 1944)). A creditor's bill may be brought: (1) to set aside a fraudulent transfer; or (2) to discover assets the judgment debtor has hidden. *Id.* A creditor must exhaust her legal remedies before proceeding in equity to pierce the corporate veil. *Buckley v. Maupin*, 125 S.W.2d 820, 823 (Mo. 1939). A return of *nulla bona*, upon execution, is evidence of the exhaustion of remedies, but action on the execution may be dispensed where the judgment debtor has been shown to be insolvent. *Id.*

Courts may consider piercing the corporate veil of an entity upon a finding the entity is the alter ego of the defendant judgment debtor. *Greater St. Louis Const. Laborers Welfare Fund v. Mertens Plumbing & Mech., Inc.*, 552 F. Supp. 2d 952, 955 (E.D. Mo. 2007). An entity is the alter ego of the defendant judgment debtor, through common control, by an analysis of the following factors: "whether the change in operations is unlawfully motivated, whether the new employer is owned or controlled by the old employer, and whether the new operator has the same business purpose, operations, equipment, customers, management, and supervision as the old operation." *Woodline Motor Freight, Inc. v. N.L.R.B.*, 843 F.2d 285, 288 (8th Cir. 1988).

### III. DISCUSSION

Plaintiff argues it should be allowed to pierce the corporate veil of SCGC due to the immediate familial ties of the owners of Defendant and SCGC, the timing of SCGC's opening subsequent to the closing of Defendant, and the common address, phone number, advertising, and signage of the two companies. To the contrary, Defendant responds it has not concealed trucks it owns in the possession of SCGC, SCGC rents the same property as Defendant previously occupied from a third party, and there are innocent, cost-saving measures which have

motivated the retention of existing signage, phone numbers, and the inadvertent retention of Defendant's website linked to SCGC's Facebook page.

Before a creditor can pierce the corporate veil of another entity, in an attempt to recover a judgment owed by the judgment debtor, the creditor must satisfy a three prong test, in order to show the entity targeted is the alter ego of the named judgment debtor, and the entity was created with a fraudulent purpose. First, "a creditor must show that the alter ego has 'control' of the entity's finances, policy, and business practices with respect to the transaction at issue." *Sunrise Const., Inc.*, 2009 WL 73664, at *3. Second, the creditor must show "breach of duty-that this control was used by the corporation to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of the plaintiff's legal rights" that caused the injury to the plaintiff. *Id.* (Citations omitted.) Finally, the alleged control and breach of duty must be the proximate causation of the creditor's injury *Id.*

The first prong, control, is the overarching concern with respect to an entity's alter ego status. Control for purposes of proving alter ego means not just "mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Id.* As discussed *supra*, the Court must consider the following factors to determine Defendant's control of SCGC: "whether the change in operations is unlawfully motivated, whether the new employer is owned or controlled by the old employer, and whether the new operator has the same business purpose, operations, equipment, customers, management, and supervision as the old operation." *Woodline Motor Freight, Inc.*, 843 F.2d at 288.

A. *Control*

Regarding the common ownership of Defendant and SCGC, though Mr. and Mrs. Stika apparently no longer have any ties with SCGC, their daughter, Ms. Skaggs, and their son-in-law, Ms. Skaggs's husband, essentially carried on the family business under a new name when Defendant stopped its participation in the construction business. Courts have found similar arrangements between family members, especially where labor relations were involved, to constitute common control. *See N.L.R.B. v. Stowe Spinning Co.*, 336 U.S. 226, 227 (1949). This Court has recently held "Separate companies will be treated as having common ownership where their owners share close family relationships." *Greater St. Louis Const. Laborers Welfare Fund v. Gen. Site Servs., LLC*, No. 4:12CV791 CDP, slip op. at 2 (E.D. Mo. Mar. 14, 2014) (citing *NLRB v. Stowe Spinning Co.*, 336 U.S. 226, 227 (1949) (parenthetical omitted); *N.L.R.B. v. Dane Cnty. Dairy*, 795 F.2d 1313, 1322 (7th Cir. 1986) ("Familial control constitutes common ownership and control.")).

Similarly to this case, *General Site Services* involved a daughter who re-opened her father's business under a new name. *Id.* In that case, the twenty-one year-old daughter owned the business in name only, and the motive behind the new business was to employ her father in charge of the operations so he could continue running his "daughter's" business, because, as he acknowledged, he could not own anything after the judgment. *Id.* at 1, 2. The father was in charge of management and operations for both companies, and the only difference between the two companies was the daughter's transition from doing bookkeeping to ownership. *Id.* at 1. Otherwise, the business still operated out of the father's home, utilized several of the same employees in the same capacity, and still operated as an excavating company, while providing the father with continued employment not subject to his company's judgment debt. *Id.* By

comparison, SCGC operates out of the same address, continues Defendant's legacy in the concrete business, and provides the Stikas' daughter and son-in-law the opportunity to save the family business under a variation of the family name by avoiding paying the debts or Judgment owed by Defendant.

Defendant and SCGC are in the concrete business, and Ms. Skaggs continues to operate the company and control labor relations, the same position she occupied on behalf of Defendant. While Defendant disputes the motive for using the same equipment, and disputes the business property is an asset which passed in ownership from Defendant to SCGC, Defendant acknowledges SCGC utilizes much of the same equipment, same business property, same telephone number, some employee uniforms, a Facebook page, and permanent signage outside the building and on at least one vehicle, which purport SCGC, or in some cases, Stika Concrete Contracting Company, was established in 1964. The Court finds SCGC and Defendant share a common business purpose; common management, supervision, and operations; common equipment; and common employees. Thus, the Court finds the issue of control has been satisfied by Plaintiff.

B. *Breach of Duty*

Plaintiff argues SCGC was created for the sole reason of avoiding Defendant's liabilities, and even if it was not, alter ego can still be found to protect a creditor's interest. Defendant argues there is no fraud on its part, or SCGC's, because there was no dishonesty regarding Defendant's assets. Defendant further claims the use of similar resources was merely a cost-saving measure by SCGC. While Defendant, on behalf of SCGC, proposes innocent, cost saving reasons for SCGC's use of substantially the same equipment as Defendant, this argument misses the mark in negating Defendant maintained the intent to act in deliberate disregard of Plaintiff's

7

rights. When an entity, as a judgment debtor, causes the transfer of substantially all of its assets, employees and contracts to another entity without consideration, so it is undercapitalized and unable to meet the financial obligation owing under the judgment, there is sufficient evidence for a conclusion the judgment debtor acted with an intent to commit fraud, wrongdoing, or otherwise avoid its positive legal duty owed to its creditor. *See H.H. Robertson Co., Cupples Products Div. v. V.S. DiCarlo Gen. Contractors, Inc.*, 789 F. Supp. 998, 1000 (E.D. Mo. 1992), *aff'd*, 994 F.2d 476 (8th Cir. 1993). Defendant cites Ms. Skaggs's deposition to assert there are at least some trucks which were previously owned by Defendant, now in the possession of SCGC. To the extent Defendant admits the existence of these assets, it argues this admission precludes a fraudulent intent to conceal assets owned by Defendant. However, as discussed *supra*, the purpose of issuing a bill in equity is not only to discover concealed assets (which is not limited to those assets disclosed), but also to set aside fraudulent transfers. It would be inequitable to deny a motion for a bill in equity to pierce the corporate veil upon a judgment debtor's decision to disclose some assets in order to avoid its creditors. By maintaining much of the same appearance as Defendant, SCGC may be able to retain much of Defendant's good will and other intangible assets. Under the circumstances, equity would allow Plaintiff to discover such assets which may exist. The Court finds Defendant breached its duty to Plaintiff.

    C. *Proximate Causation*

The final requirement for piercing the corporate veil is Plaintiff must show the control and the breach of duty by Defendant proximately caused the injury or unjust loss of which Plaintiff complains. *Fleming Companies, Inc. v. Rich*, 978 F. Supp. 1281, 1303 (E.D. Mo. 1997). The wrong done must be the proximate cause of injury to the third person who dealt with the corporation. *Id.* Here, Plaintiff has established the daughter and son-in-law of Defendant's

owners continue to control Defendant's concrete business under the SCGC name, and act in substantially the same capacity, ownership, as they did on behalf of Defendant. Further, Defendant breached its duty to Plaintiff when its owners transferred the business without satisfaction of its debt to Plaintiff. The admissions in Ms. Skaggs deposition reveal the existence of some of Defendant's assets which could partially satisfy the debt owed to Plaintiff. Defendant's decision to go out of business and transition the family business to Ms. Skaggs and her husband under a new name, avoided Defendant's obligations to the Plaintiff and removed assets from Plaintiff's reach. The Court finds the closing of Defendant business and creation of SCGC, continuing the business under the same format with many of the same assets, is the causation of Plaintiff's inability to further satisfy the Judgment against Defendant. The remaining value in Defendant's business and any remaining assets were funneled to SCGC. Thus, the Court finds Defendant's breach of duty was the proximate causation of the injury to Plaintiff. Additionally, for the circumstances discussed *supra*, granting Plaintiff's Motion is proper.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's "Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil" [ECF No. 34], is **GRANTED**.

So Ordered this 13th day of May, 2016.

_E. Richard Webber_
_____

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE